IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHNNY D. OLSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-4046-CV-C-ODS-SSA |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born September 5, 1962, and has a high school education. He alleges he became disabled on May 1, 2008, due to a combination of diabetes, pancreatitis, high blood pressure, and depression.

The Record reveals that in May 2008, Plaintiff was admitted to University Hospital in Columbia, Missouri, with uncontrolled diabetes and pancreatitis. R. 225, 233. Jonathan Collins, M.D., treated Plaintiff with insulin and antibiotics and noted Plaintiff improved a lot by the next day. R. 225. Upon discharge, Plaintiff was instructed to continue taking insulin. R. 225

In November 2008, Plaintiff saw Dr. Collins who noted Plaintiff's history of diabetes, alcohol abuse, and chronic pancreatitis. R. 245. Plaintiff said he had some vision problems and he had not gotten better in controlling his diabetes. R. 245. Dr. Collins diagnosed Plaintiff with hypertension, but did not treat Plaintiff at the time and

instead said that medication may be required in the future. R. 245. Plaintiff's dosage of insulin was also adjusted. R. 245.

In December 2008, Dr. Collins again commented on Plaintiff's uncontrollable diabetes, past history of alcohol abuse, chronic pancreatitis, and a new diagnosis of hypertension. R. 244. Plaintiff had not taken the adjusted dosage of medication as instructed at the previous appointment, nor had he obtained his fasting labs. R. 244. Plaintiff's diabetes medication was adjusted and the doctor proscribed medication for hypertension. R. 244.

In January 2009, Dr. Collins proscribed Plaintiff with antibiotics for a tooth abscess. R. 241. Plaintiff still had uncontrolled diabetes and uncontrolled hypertension. R. 241. Plaintiff saw Dr. Collins again in June 2009 to follow up with his diabetes. R. 240. Plaintiff also complained of pain in his right shoulder, after which Dr. Collins proscribed medication. R. 240. Plaintiff had not been eating an appropriate diabetic diet. R. 240.

In July 2009, Plaintiff followed up with Dr. Collins for his diabetes, hypertension, and right shoulder pain. R. 238. Plaintiff reported his diabetes were under control. R. 238. Plaintiff said he was watching his diet and taking his diabetes medication. R. 238. Dr. Collins diagnosed Plaintiff with right shoulder bursitis, hypertension, and diabetes, and recommended a continuation of medication for the diabetes and hypertension. R. 238.

On September 18, 2009, Plaintiff was referred to Thomas Spencer, Psy. D., for a psychological evaluation to assist in the determination of Medicaid eligibility. R. 269-74. Plaintiff arrived 10 minutes early and drove himself to the appointment. R. 271. Plaintiff's chief complaint was that he needed help with his bills and could not do much to pay for them. R. 271. During the examination, Plaintiff said he had been emotional lately and cried for no apparent reason. R. 271. He said he was depressed, lacked motivation and energy to be around others, and felt hopeless, helpless, and worthless at times. R. 271. Plaintiff denied the presence of panic attacks and denied feeling overwhelmed. R. 271. Plaintiff said he was helping a friend build a deck, but could not think during the process, saying he felt confused. Dr. Spencer thought Plaintiff's description sounded more like impairment in attention and concentration. R. 271.

Plaintiff said his depression comes and goes but does not last more than a day at most. R. 271.

Dr. Spencer had previously examined Plaintiff in August 2008 and diagnosed him with adjustment disorder. R. 271. Plaintiff had no further contact with a psychiatrist or psychologist since that time and a doctor never prescribed psychotropic medication. R. 271. At the examination, Plaintiff's motor behavior appeared fairly normal and there was no appearance of physical distress. R. 273. Dr. Spencer thought Plaintiff seemed a bit anxious, but that his flow of thought was intact and organized and his insight was intact. R. 273. Plaintiff had adjustment disorder and was depressed and anxious. R. 274. Dr. Spencer concluded Plaintiff has a mental illness, but that it does not necessarily interfere with his ability to engage in employment suitable for his age, training, experience and/or education. R. 274.

On September 24, 2009, Earl Haskell, M.D., completed a medical review upon request of a State agency, noting diagnoses of marked obesity with diabetes and hypertension; alcoholism; and anxiety and depression. R. 255. On November 9, 2009, another physician reported that Plaintiff has diagnoses of hypertension, obesity, right shoulder pain, chronic pancreatitis, and a history of alcohol abuse. R. 252.

On March 23, 2010, Dr. Collins completed a medical source statement. R. 291-92. Dr. Collins noted that Plaintiff could lift and carry 50 pounds frequently and occasionally. R. 291. He could stand and/or walk for four hours total, up to 20 minutes at a time. R. 291. He could sit for eight hours total, for three to four hours at a time. R. 291. Plaintiff's limitations included his ability to push or pull overhead. R. 291. Plaintiff could never climb and could occasionally balance, stoop, kneel, crouch, and bend. R. 292. Plaintiff could finger, feel, and hear, without limit, but had limitations in his ability to reach, handle, see, and speak, and was restricted from fumes and certain machinery. R. 292. Dr. Collins checked a box on the form to indicate that reclining for up to 30 minutes, one to three times a day, as well as and propping up his legs to a height of two to three feet, one to three times a day while sitting, "would be considered necessary to help [Plaintiff] in regard to control of existing pain or fatigue." R. 293.

On April 27, 2010, Dr. Collins noted Plaintiff's history of diabetes and depression. R. 295. Plaintiff indicated he felt "much better" and got more sleep after starting anti-

3

depression medication. R. 295. Dr. Collins instructed Plaintiff to continue his current dosing of diabetes medication. R. 297. Dr. Collins said Plaintiff was doing well with his depression, but increased his dosage of anti-depression medication. R. 297.

On October 9, 2010, Plaintiff went to the emergency room to have an abscess on his groin drained. R. 304-05. Doctors noted Plaintiff's history of diabetes and pancreatitis. R. 304. It was also reported that Plaintiff's diabetes was poorly controlled and Plaintiff had not been taking his medications because of his lack of finances. R. 310-11. Sofia Syed, M.D., recommended that Plaintiff establish care in the family health center for better diabetic control and provided recommendations on how Plaintiff might get free insulin and test strips. R. 312.

During the administrative hearing on December 3, 2010, Plaintiff testified he lives with a former girlfriend in her home. R. 41. The last time he worked was in 2002 doing some tree work and kitchen work. R. 42. Before that, he did some carpentry, mechanical work, and cooking. R. 42. Plaintiff testified he takes medication for diabetes, high blood pressure, and mental stress. R. 44. Plaintiff testified he could lift about 50 pounds, walk an eighth of a mile, stand for 30 minutes, and sit for two hours. R. 44-45. On a typical day, Plaintiff feeds himself, takes his insulin, and finds something to do, such as cut wood or make children's toys. R. 46. In his spare time he watches television and walks around. R. 48. Plaintiff mows the grass every two weeks for about fifteen minutes. R. 47. Plaintiff cleans around the house and takes out the trash. R. 49.

Plaintiff testified that the main reason he was unable to work was because of his recurrent vomiting episodes, which would cause him to hide and make several trips to the bathroom. R. 50. Because of his diabetes, Plaintiff reported he has no energy and has to lie down during the day for about an hour by lunchtime, and gets tired again by five or six o'clock. R. 52. Plaintiff's depression causes him to cry for an hour or more weekly. R. 53. Plaintiff also complained of insomnia, headaches, and right arm problems. R. 53, 55.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined Plaintiff had not engaged in substantial gainful activity since August 25, 2009, the application date. At step two, the ALJ found Plaintiff has the following

4

severe impairments: diabetes, hypertension, and depression. At step three, the ALJ determined Plaintiff's ailments do not meet or equal a listed impairment. For steps four and five, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform light work (light work is defined as lifting 20 pounds occasionally, 10 pounds infrequently, and standing or walking up to 6 hours in an 8 hour work day) except the claimant must sit and stand at will, and he can walk 4 out of 8 hours for a full eight hour day. The claimant's ability to push, pull, and engage in gross/fine movements is unlimited, except he can occasionally perform overhead lifting, bilaterally. He can occasionally climb stairs, but cannot climb ladders, ropes, scaffolds, or run. The claimant can occasionally bend, stop, crawl, balance, twist, and squat. In addition, the claimant can understand simple instructions, and can concentrate and perform simple tasks. Furthermore, the claimant can get along with others; and, respond and adapt to workplace changes and supervision.

Next, the ALJ found Plaintiff is unable to perform any past relevant work, but considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Finally, the ALJ concluded Plaintiff is not disabled.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991) (citing *Hutsell v. Sullivan*, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

5

III. DISCUSSION

Plaintiff argues the ALJ erred in assessing Plaintiff's RFC by rejecting a portion of an opinion by Plaintiff's treating physician, Dr. Collins. Specifically, Plaintiff argues the RFC is deficient because it fails to include Plaintiff's need to recline and elevate his feet. The Court disagrees.

The ALJ has the responsibility to assess a claimant's RFC based on all the relevant evidence. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). A treating physician's opinion will be given controlling weight if it is not inconsistent with the other substantial evidence in the record and is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Woods v. Astrue*, 780 F.Supp.2d 904, 912 (E.D. Mo. 2011) (citing *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). "While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it 'does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). Accordingly, a treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ must give "good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2).

In this case, Dr. Collins' medical source statement noted that Plaintiff could carry 50 pounds frequently and occasionally. R. 291. Plaintiff could stand and/or walk for 4 hours total, up to 20 minutes at a time, and could sit for eight hours total, for 3-4 hours at a time. R. 291. The ALJ's RFC determination includes physical limitations that are greater than Dr. Collins' opinion on Plaintiff's functional physical capacity. R. 31, 33. For example, the ALJ determined Plaintiff could lift 20 pounds occasionally and 10 pounds infrequently, must sit and stand at will, and could walk 4 out of 8 hours for a full eight hour day. R. 31. The ALJ found most of Dr. Collins' opinion to be persuasive and supported by the record as a whole and incorporated some of the limitations within the established RFC. R. 31, 33. However, the ALJ only gave Dr. Collins' opinion some

6

weight because he found that a few limitations—including Plaintiff's need to elevate his feet, and the upper extremity handling, seeing, and speaking limitations—unsupported by the objective medical evidence. R. 33.

The Court finds that the ALJ did not err in discounting a portion of Dr. Collins' opinion from the medical source statement and giving Dr. Collins' opinion some weight. First, the ALJ accepted a majority of Dr. Collins' opinion. Second, the only instance in the Record that noted Plaintiff's need to recline and elevate his feet to reduce pain was in the single medical source statement where Dr. Collins checked a box on a pre-drafted questionnaire form. R. 293. Dr. Collins never ordered or even suggested to Plaintiff that he recline and elevate his feet. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (discrediting treating physician's opinion of limitations where "[n]one of these restrictions appear elsewhere in [the treating physician's] treatment records."). Because a portion of Dr. Collins' opinion is not supported by the medical evidence in the Record, the ALJ properly gave Dr. Collins' opinion some weight.

Plaintiff also criticizes the ALJ's hypothetical question posed to the vocational expert ("VE") because it failed to include the need to lie down and elevate the feet during the day. This argument is without merit. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacrois v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). The hypothetical question posed to the VE included all of Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC. Accordingly, the ALJ's RFC determination is supported by substantial evidence.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

DATE: December 3, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

7